786 So.2d 218 (2001)
Mary Marcantel BELLARD, et al., Plaintiffs-Appellants,
v.
WILLIS KNIGHTON MEDICAL CENTER, Defendant-Appellee.
No. 34,360-CA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 2001.
*219 Nelson, Hammons & Self, By John L. Hammons, Shreveport, Counsel for Appellants.
Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell, By Lawrence W. Pettiette, Jr., Joe Woodley, Shreveport, Counsel for Appellee.
Before BROWN, WILLIAMS, STEWART, GASKINS and DREW, JJ.
GASKINS, J.
The plaintiffs, Mary Marcantel Bellard, Frances Marcantel, and Loretta Marcantel Plemons, filed a medical malpractice action against Willis Knighton Medical Center (WKMC), contending that an emergency room nurse breached the applicable standard of care in having security remove their paranoid and psychotic brother, Simon Marcantel, instead of notifying the emergency room doctor and detaining the patient for treatment. Several hours after he left the hospital, Mr. Marcantel was shot and killed in an armed confrontation *220 with Caddo sheriffs deputies. A jury concluded that no employees of WKMC breached any duty owed to Mr. Marcantel. The plaintiffs appealed. For the following reasons, we affirm.

FACTS
On May 5, 1994, shortly after midnight, Simon Marcantel went to the emergency room of WKMC. Mr. Marcantel appeared to be psychotic. The emergency department nurse, Patrick LeBlanc, placed Mr. Marcantel in a treatment room and began to process the necessary paperwork. Mr. Marcantel was holding a box and would not say what was in it. Doug Sanders and Billy Hays of hospital security were summoned. They asked Mr. Marcantel if they could look in the box. He agreed, asking if they were with the CIA. They determined that the box contained light bulbs. Mr. Marcantel said that he heard voices in his head telling him to do "crazy things." He refused to be specific about what the voices were commanding him to do. He stated that he felt that Nurse LeBlanc was "plotting with the rest of them" to manipulate his thoughts. Nurse LeBlanc told Mr. Marcantel that he would ask the physician on duty to see him. Mr. Marcantel stated that he would not let the doctor see him because the doctor was also trying to manipulate his thoughts. As Mr. Marcantel left the building, Nurse LeBlanc urged him to wait to see the doctor. He left and then returned within a couple of minutes and demanded his hospital chart. When his request was refused, Mr. Marcantel became loud and belligerent. Security was again called and Mr. Marcantel was told that if he did not want to stay for treatment, he needed to leave the hospital. He complied with their instructions, got into his vehicle and drove away.
Around 2:25 a.m., the Caddo Parish Sheriffs Office received a call regarding a disturbance in a wooded area near Mr. Marcantel's home. Shortly after deputies arrived, gunshots were fired, apparently by Mr. Marcantel. A crisis intervention team was called in to negotiate. Also, a special response team (SRT) was called in. This is a group of officers trained in such situations and in the use of automatic weapons. Around dawn, when Mr. Marcantel, brandishing weapons, advanced on the officers, he was shot and killed.
The plaintiffs, sisters of the decedent, convened a medical review panel. The panel concluded that the applicable medical standard required the nurse to inform the doctor of Mr. Marcantel's presence and his condition. Because the nurse failed to do so in this case, the medical review panel concluded that WKMC deviated from the applicable standard of care. However, the medical review panel found that the conduct complained of "was not a factor of the asserted resultant damages." In reasons for the conclusion, the medical review panel stated that there was insufficient evidence to conclude that the breach of the standard of care resulted in the subsequent shooting of Mr. Marcantel by the officers.
The plaintiffs settled with WKMC for an amount less than the statutory cap, reserving their right to seek additional compensation from the Louisiana Patient Compensation Fund (PCF).[1] The plaintiffs proceeded to jury trial against the PCF, claiming that Nurse LeBlanc's failure to notify the physician on duty, so that Mr. Marcantel could be detained for treatment on a physician's emergency commitment *221 (PEC), was a breach of the applicable standard of care and was a substantial factor in Mr. Marcantel's death.[2]
At the close of the evidence, the plaintiffs moved for directed verdicts on the issues of fault, causation, and damages. The trial court denied the motions. The case was submitted to the jury, which concluded in an 11 to one verdict that there was no breach of any duty owed by WKMC to Mr. Marcantel. The plaintiffs appealed, arguing that the trial court erred in failing to grant the directed verdicts and that the jury erred in its conclusion denying their claims for damages.

BREACH OF DUTY
The plaintiffs argue that the trial court erred in denying their motion for a directed verdict on the issue of fault. The plaintiffs contend that the action of the nurse, Patrick LeBlanc, in failing to notify the emergency room doctor of Mr. Marcantel's condition, was a breach of the applicable medical standards and resulted in their brother's death.
According to the plaintiffs, it is not disputed that the applicable standard of care required the emergency room nurse to inform the doctor on duty of Mr. Marcantel's condition so that he could be detained if necessary on a PEC. They contend that this duty was breached and that if the emergency room doctor had been informed of Mr. Marcantel's presence and condition, he would not have become involved in the altercation with sheriff's deputies which resulted in his death. The plaintiffs maintain that, at trial, each member of the medical review panel and the plaintiffs' expert witness, Dr. George Seiden, testified to that effect. The plaintiffs argue that, in agreeing that the standard of care was breached, the medical experts rejected the notion that Mr. LeBlanc did not have time to tell the emergency room doctor about Mr. Marcantel.
Dr. George Seiden, an expert in psychiatry, testified on behalf of the plaintiffs. He reviewed the medical review panel records, the narrative of Patrick LeBlanc and the statement of the hospital security officers who dealt with Mr. Marcantel. He determined that Mr. Marcantel was obviously psychotic when he arrived at the emergency room. He was agitated, paranoid, and was having hallucinations and delusions. Noting that security was called, Dr. Seiden concluded that Nurse LeBlanc must have determined that the patient was a danger to himself or others. According to Dr. Seiden, Mr. Marcantel should have been detained at the hospital, a doctor summoned and a PEC issued.
Dr. Richard Williams, a member of the medical review panel, was accepted as an expert in psychiatry and addiction medicine. He testified that WKMC failed to meet the applicable standard of care in this case. According to Dr. Williams, when Mr. Marcantel came to the emergency room, he was obviously psychotic. The nurse's failure to contact a physician was a violation of the applicable medical standards. Dr. Williams concluded that there was plenty of time to notify a physician so that a PEC could have been issued. Dr. *222 Williams noted that the medical review panel did not conclude that the conduct of Nurse LeBlanc was a contributing factor in Mr. Marcantel's death. He stated that additional information regarding the stand-off with sheriff's deputies, learned after the medical review panel opinion, led him to change his mind. He concluded that WKMC's substandard care was causally related to or a substantially contributing factor in the death of Mr. Marcantel. He stated that if WKMC had handled the patient appropriately at its emergency room, it is more probable than not that his death could have been avoided. However, during questioning of Dr. Williams, it was noted that Mr. Marcantel was only in the emergency department for less than 15 minutes. When asked whether the doctor would have had sufficient time to assess Mr. Marcantel, Dr. Williams responded, "There's a good chance he could not have."
Dr. Kenneth Miller, a specialist in emergency medicine, testified that he was a member of the medical review panel. He also stated that at the time of the review panel decision there was insufficient information to conclude that the nurse's failure to notify the' emergency room doctor regarding Mr. Marcantel caused the patient's death. However, with information gained after the panel's decision, he concluded that the nurse had sufficient time to notify the doctor and that the failure to do so led to Mr. Marcantel's death. Dr. Miller noted that the nurse's action in notifying security indicated that he perceived some threat from Mr. Marcantel.
Dr. Eustace Edwards, III, an emergency room doctor, was also a member of the medical review panel. Dr. Edwards noted that the panel concluded that there was not enough information to determine that the actions of the nurse caused the death of Mr. Marcantel. Dr. Edwards testified that a PEC could be issued only by a doctor, not by a nurse. Dr. Edwards was asked whether Mr. Marcantel's death would have been prevented had WKMC provided appropriate medical care. The doctor said, "maybe" assuming that, when the physician came out to examine the patient, there was a patient present to evaluate.
Dr. Nikunj Kandilal Parikh, the WKMC emergency room doctor on duty when Mr. Marcantel sought treatment, testified at trial. He stated that Mr. Marcantel came to the emergency room at 12:45 a.m. complaining of depression and anxiety. Nine other patients were in the emergency department at that time, including one with chest pains, one with rectal bleeding and two that required sutures. He stated that he probably would not have left a more seriously ill patient to go to Mr. Marcantel since the nurse did not indicate that the patient was dangerous. Dr. Parikh stated that he could not have detained the patient without first evaluating him and determining that he was suicidal, homicidal or gravely disabled. According to Dr. Parikh, the nurse did not have authority to detain the patient.
Billy Hays, a Caddo sheriffs deputy, was working off duty as a security guard at WKMC on the morning Mr. Marcantel sought treatment. He stated that Mr. Marcantel was not behaving in a violent or threatening manner. He said the patient became agitated when he was unable to get a copy of his hospital record. According to Deputy Hays, Nurse LeBlanc tried to get Mr. Marcantel to stay to see the doctor.
Deputy Hays and another security officer, Doug Sanders, followed the patient outside. He was then instructed that if he did not want to see a doctor, he should leave the premises. They watched as Mr. Marcantel left. Deputy Hays ran a criminal history on Mr. Marcantel which was *223 negative. Because they had Mr. Marcantel's address, Deputy Hays alerted the sheriffs dispatcher, Rhonda Shoemake, that Mr. Marcantel was agitated. He instructed her to inform the area deputy if they got any calls in that area. According to Deputy Hays, because Mr. Marcantel was not posing a threat, they could not have taken him into protective custody.
Doug Sanders testified that Mr. Marcantel was not violent. He did not think Mr. Marcantel needed to be restrained. When he became belligerent in the emergency room waiting area, he was asked to leave and he did so.
Patrick LeBlanc testified that when Mr. Marcantel reported to the emergency room he was holding a box and looking nervous. Mr. Marcantel's chief complaint was hearing voices which were manipulating his thoughts and telling him to do "crazy things." He then stated that he did not want to say anything else until he talked to someone who could assure him that no one was out to get him. Security came in and checked the box that he was holding. Nurse LeBlanc asked if the voices were telling him to harm himself or anyone else. Mr. Marcantel refused to answer the question.
Mr. Marcantel then decided that he would not stay to see a physician because the doctor was "in it with the rest of them." Nurse LeBlanc tried to persuade Mr. Marcantel to stay and see a doctor, but he refused. Nurse LeBlanc, stated that Mr. Marcantel was not dangerous. He did not ask security to detain Mr. Marcantel because he had not verbalized any threats or suicidal tendencies. According to Nurse LeBlanc, he had no authority to detain or restrain a patient. When questioned about why he did not summon the doctor, Nurse LeBlanc made the following statement regarding the treatment of Mr. Marcantel, "When he was dealing with me face to face I tried to deal with him as best I could. I didn't stop and turn my attention to go and try and find the physician again. I simply tried to deal with him as best I could at that time."
Nurse LeBlanc stated that he tried to find the doctor just before Mr. Marcantel left the hospital, while he was talking to the security guards. However, Nurse LeBlanc could not recall whether he actually spoke with Dr. Parikh.
Rhonda Shoemake, the Caddo Parish Sheriffs Office dispatcher, testified that, on the day of the incident, she spoke with Deputy Hays at WKMC. Deputy Hays told her the WKMC personnel were uncomfortable with Mr. Marcantel. Around 2:45 a.m., Deputy Shoemake received a call regarding a disturbance in the woods near Mr. Marcantel's home. Deputy Shoemake testified that during the stand-off she twice spoke by telephone with Nurse LeBlanc who stated that he felt that Mr. Marcantel was dangerous and "that he was not surprised by the situation we had." Nurse LeBlanc denied telling Deputy Shoemake that Mr. Marcantel was dangerous.
In a medical malpractice action against a hospital, the plaintiff is required to prove, as in any negligence action, that the defendant owed the plaintiff a duty to protect against the risk involved, that the defendant breached its duty, and that the injury was caused by the breach. Piro v. Chandler, 33,953 (La.App.2d Cir.11/1/00), 780 So.2d 394; Gordon v. Willis Knighton Medical Center, 27,044 (La.App.2d Cir.6/21/95), 661 So.2d 991, writs denied, 95-2776, 27-2783 (La.1/26/96), 666 So.2d 679.

Motion for Directed Verdict
The plaintiffs argue that the judge erred in denying their motion for directed verdict *224 on the issues of fault, causation and damages.
The motion for a directed verdict is a procedural device in jury trials to promote judicial efficiency. The motion is appropriately made at the close of the evidence offered by the opposing party and should be granted when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences so overwhelmingly favor a verdict for the movant, that reasonable jurors could not have arrived at a contrary conclusion. Brockman v. Salt Lake Farm Partnership, 33,938 (La.App.2d Cir.10/4/00), 768 So.2d 836, writ denied, XXXX-XXXX (La.12/15/00), 777 So.2d 1234. If there is substantial evidence opposed to the motion, i.e., evidence of such quality and weight that reasonable and fair-minded jurors, in the exercise of impartial judgment might reach a different conclusion, the motion should be denied and the case submitted to the jury. Brockman v. Salt Lake Farm Partnership, supra.
The plaintiffs moved for a directed verdict on the issue of fault. The motion was denied by the trial court. The court stated that because Mr. Marcantel was only in the emergency room for 10-14 minutes, reasonable minds could disagree as to whether, within that time frame, it was a breach of duty for the nurse not to have communicated with the doctor. On that basis, the motion for a directed verdict was denied.
We find that the trial court did not err in denying the motion. While there was testimony that Nurse LeBlanc should have informed Dr. Parikh of Mr. Marcantel's condition and that he had sufficient time to do so, there was also testimony to the contrary. Given the short period of time that Mr. Marcantel was in the emergency department, the fact that Dr. Parikh was occupied with several other ill patients and Nurse LeBlanc's efforts to persuade Mr. Marcantel to stay at the hospital for treatment, we find that there was evidence to support a reasonable finding that Nurse LeBlanc did not have time to summon Dr. Parikh. Because there was evidence opposed to the plaintiff's motion of such quality and weight that reasonable and fairminded jurors, in the exercise of impartial judgment might reach a different conclusion, the trial court properly denied the motion and allowed the case to be submitted to the jury.

JURY VERDICT
The plaintiffs argue that the jury erred in concluding that there was no breach of a duty owed to Mr. Marcantel by the hospital or its employees. This argument is without merit.
A jury's findings of fact, including those on the issue of causation, may not be reversed absent manifest error or unless clearly wrong. The reviewing court must do more than just simply review the record for some evidence which supports or controverts the trial court's findings; it must instead review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Peterson v. Gibraltar Savings and Loan, 98-1601, 98-1609 (La.5/18/99), 733 So.2d 1198; Currie v. Myers, 32,633 (La.App.2d Cir.1/26/00), 750 So.2d 388, writ not considered, XXXX-XXXX (La.3/17/00), 756 So.2d 316. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one.
The reviewing court must always keep in mind that if the trial court or the jury's findings are reasonable in light of the record reviewed in its entirety, the *225 court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Peterson v. Gibraltar Savings and Loan, supra. When testimony on an issue conflicts, reasonable evaluations of credibility and inferences of fact should not be disturbed even if the appellate court concludes that its own factual evaluations are as reasonable as those made by the trial court. Indeed, factual findings must be given great discretion because the fact trier has the superior capacity to assess the credibility of the witnesses; only the finder of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Currie v. Myers, supra.
In this case, there is no dispute that the applicable standard of care required the emergency room nurse to notify the doctor of the patient's condition. It is also not disputed that this did not occur. The question is whether the jury was reasonable, under the facts presented, in concluding that this did not constitute a breach of duty owed to Mr. Marcantel. Testimony and evidence were presented showing that Mr. Marcantel was only in the emergency department for 15 minutes or less. Nurse LeBlanc testified that he attempted to notify the doctor and was prevented from doing so by Mr. Marcantel's hasty departure. Nurse LeBlanc and the hospital security officers did not perceive Mr. Marcantel to be a threat and did not think he was a danger to himself or others. There was testimony that neither Nurse LeBlanc nor the security officers had authority to detain Mr. Marcantel against his wishes. The evidence showed that Mr. Marcantel was able to get into his vehicle and drive away from the hospital in a normal manner. The jury was confronted with conflicting testimony and evidence regarding whether Nurse LeBlanc's actions constituted a breach of duty owed to Mr. Marcantel. The jury chose one of two permissible views of the evidence presented and concluded that there was no breach of duty under the facts presented in this case. The jury's choice was a reasonable one and therefore is not manifestly erroneous or clearly wrong. Therefore, the jury's verdict is affirmed.

CAUSATION AND DAMAGES
The plaintiffs argue that the trial court also erred in failing to grant directed verdicts on causation and damages. Because we affirm the trial court's denial of a directed verdict on the issue of breach of duty and we affirm the jury's verdict that WKMC did not breach a duty owed to Mr. Marcantel, discussion of these two assignments of error is rendered moot.

CONCLUSION
For the reasons stated above, the decision of the trial court denying the motions for directed verdict filed by the plaintiffs, and the jury verdict rejecting the plaintiffs' claims against the Patient Compensation Fund and the Willis Knighton Medical Center are affirmed. All costs in this court are assessed to the plaintiffs, Mary Marcantel Bellard, Frances Marcantel, and Loretta Marcantel Plemons.
AFFIRMED.
STEWART, J., dissents with reasons.
WILLIAMS, J., dissents. The jury was clearly wrong in finding that the nurse did not breach the standard of care.
STEWART, J., dissenting.
In a medical malpractice action, the plaintiff has the burden of proving by a preponderance of the evidence the applicable standard of care, the breach thereof, *226 and a causal connection between the breach and the injuries sustained. La. R.S. 9:2974. While the opinions of medical professionals are necessary for a determination of the applicable standard of care and the breach of the standard of care, such opinions are persuasive, rather than controlling. Warren v. Everist, 30,187 (La.App.2d Cir.1/21/98), 706 So.2d 593, writ denied, 98-0477 (La.4/3/98), 717 So.2d 1132.
In this instance, the expert opinion was unanimous in establishing the applicable standard of care and the breach of the standard of care. The expert opinion was not controverted. The standard of care required Patrick Leblanc, the nurse assisting Mr. Marcantel, to immediately contact any doctor available in the emergency room at the time Mr. Marcantel began to leave. Leblanc failed to do this, or even to make any attempt to inform a doctor about Mr. Marcantel's presence and psychotic symptoms. Instead, Mr. Leblanc alerted security and eventually had security escort Mr. Marcantel out of the hospital and to the parking lot where his vehicle was located when he began exhibiting more aggressive behavior.
The issue of breach should not have reached the jury. Plaintiffs' counsel moved for a directed verdict on this issue. The trial judge denied the motion even while agreeing with plaintiffs' counsel that the breach was established by a preponderance of the evidence. The trial judge believed that a time frame issue existed which required the jury to determine whether, within the short time frame of Mr. Marcantel's presentation at the hospital, there was sufficient time for Leblanc to have communicated with a doctor. The majority bases its decision affirming the jury's erroneous finding on this same faulty time frame issue. However, the medical review panel opinion clearly indicates that the panel members were aware of the short time frame during which these events unfolded, and that they nevertheless determined that Leblanc breached the standard of care. Dr. Seiden reached the same conclusion as the medical review panel. Nothing in the record proves otherwise. The record does clearly show that Leblanc had opportunity to seek out a doctor. After all, he certainly had sufficient time to seek out security on two occasions. As a nurse, Leblanc had the duty and authority to have Mr. Marcantel escorted into the hospital for care, not out of it.
For these reasons, I respectfully dissent.
NOTES
[1] The PCF's third-party demand against the Caddo Parish Sheriff's Office was dismissed prior to trial.
[2] Regarding PECs, La. R.S. 28:53(B)(1) provides:

Any physician or psychologist may execute an emergency certificate only after an actual examination of a person alleged to be mentally ill or suffering from substance abuse who is determined to be in need of immediate care and treatment in a treatment facility because the examining physician or psychologist determines the person to be dangerous to self or others or to be gravely disabled. Failure to conduct an examination prior to the execution of the certificate will be evidence of gross negligence.